IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

WINSTON KEITH GOFORTH,

                Plaintiff

    VS.

DR. ODERINDE, *et al.*,

                Defendants

NO. 5:02-CV-94 (HL)

**PROCEEDINGS UNDER 42 U.S.C. §1983
BEFORE THE U. S. MAGISTRATE JUDGE**

# RECOMMENDATION

Before the court in the above-styled case is the defendants' Motion for Summary Judgment. Tab #136. Plaintiff Winston Keith Goforth has responded to the defendants' motion, and the defendants have replied to the plaintiff's response. Tabs #152 and #157. The record also contains countless exhibits and depositions in support of both parties' contentions. This matter has been referred to the undersigned, a full time United States Magistrate Judge, for consideration pursuant to Rule 72 of the Federal Rules of Civil Procedure and Local Rule 72.

Plaintiff Goforth, an inmate in the custody of the Georgia Department of Corrections at all times relevant to this litigation, alleges that the defendants were deliberately indifferent to his serious medical needs, specifically his need for proper treatment of hepatitis C, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

# SUMMARY JUDGMENT STANDARD

Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

> *The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.*

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c);* **Warrior Tombigbee Transportation Co. v. M/V Nan Fung**, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See* **Van T. Junkins & Assoc. v. U.S. Industries, Inc.**, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. **Hairston v. The Gainesville Sun Publishing Co.**, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. **Welch v. Celotex Corp.**, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. ***Clark v. Coats & Clark, Inc.***, 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[1]

## ISSUES

In their most simple form, the questions to be answered by this court are (1) whether the Georgia Department of Corrections (GDC) policy regarding treatment of inmates with hepatitis C — specifically with respect to plaintiff Goforth — was constitutionally adequate; and if not, (2) whether the treating physician's reliance upon, and implementation of, those guidelines constituted deliberate indifference to the inmate's medical needs.

## FACTS

The facts in this case relating to the treatment that plaintiff Goforth received for his hepatitis C are, for the most part, undisputed and are included in the fifty page, 94 paragraph Statement of Undisputed Material Facts provided by the defendants in support of their Motion for Summary Judgment. The factual disputes come from the *adequacy* of that treatment.[2]

---

[1] *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (the purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial); *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 (11th Cir. 1988) (the question is whether the record as a whole could lead a rational trier of fact to find for the nonmovant).

[2] In the interest of conservation, this Recommendation will provide a brief recitation of the most pertinent facts.

Hepatitis C ("HCV") is a bloodbourne virus which was first identified in 1989 and is commonly spread when drug users share needles. Hepatitis C can lead to chronic liver disease which can in turn lead to cirrhosis,[3] liver failure, and liver cancer. In some cases where a liver has been damaged enough, death can result if a liver transplant is unavailable or unsuccessful. Chronic Hepatitis is the inflammation of liver cells; typically, an infected person will not experience symptoms or signs during the first two decades after infection.

Treatment for hepatitis C, which is done through antiviral therapy with pegylated interferon and ribavirin, is not certain to produce positive results. Because of the strides being made in antiviral therapies and because a failed treatment may be a disservice to a patient who is nonresponsive, there is a school of thought that *delay* in treatment until it is absolutely necessary *may* be prudent, in hopes that new and improved treatment options can be found.

Defendant Dr. Joseph Paris was the Medical Director for the Georgia Department of Corrections ("GDC") at all times pertinent to this lawsuit. Dr. Paris is an expert in the treatment of HCV, and as Medical Director, he "was responsible for final decision-making in the drafting, implementation, and interpretation of the GDC HCV treatment guidelines." Affidavit of Dr. Joseph Paris, Tab #136-2 at ¶2. These guidelines, which are only put in place for conditions such as hepatitis C for which treatment is not universally agreed upon, "do not constitute strict orders for specific treatment. Rather, they show the primary care physician routes of therapeutic interventions which may or may not be chosen." Id. at ¶3.

---

[3]Cirrhosis is a condition characterized by scarring of the liver, which interferes with the liver's ability to function normally. Adequate liver function is necessary for survival.

During the period in question in this suit, three different guidelines were in place within the GDC for the treatment of HCV. The first, which was initiated before plaintiff Goforth came into state custody and lasted until June 10, 2003, was Clinical Update ("CU") 99.04. The second, which was in effect from June 10, 2003, until November 22, 2004, was CU 03.03. The final guideline, which took effect on November 22, 2004 is CU 04.03. Id. at ¶5.

The hepatitis C virus was found in plaintiff Goforth's blood at his initial examination upon entering the GDC in March of 2001. His condition was *monitored* over the next four years, but *treatment* did not begin until 2005 when his condition matched the criteria in the GDC's policy.

Plaintiff Goforth has produced the deposition and declaration of Dr. Brian R. Edlin, an expert in the treatment of hepatitis C. Dr Edlin's opinions cast doubt as to whether the GDC's policy was based upon the most current information available in the field of hepatitis C treatment. Specifically, Dr. Edlin states that given the elevated alanine aminotransferase ("ALT") levels in the plaintiff's blood when he entered the penal system in 2001 (the plaintiff's ALT levels measured abnormally high six out of nine times he was tested between 2001 and 2003), the standard of medical care called for Goforth to be given a liver biopsy immediately. Instead, the GDC waited until June 2003 to perform a biopsy.

When the biopsy results were obtained, Dr. Singh — a specialist in liver disease who is not a party to this action — recommended that treatment with antiviral drugs begin immediately. However, Dr. Paris denied treatment based upon his belief that the biopsy results were inconclusive and/or because he viewed Goforth as "probably cirrhotic." It was the policy of the GDC at the time to not treat cirrhotic inmates for HCV.

Dr. Edlin opines that the type of cirrhosis Goforth displayed is not a contraindication to hepatitis C and that treatment was therefore not only appropriate but **required** at that time in order to meet an acceptable level of medical care. Dr. Paris presents differing views on this matter in his testimony before the court, although an article he co-authored in 2004 states that

> Patients with HCV-related cirrhosis have a high risk of dying from liver disease (30% over 10 years), and thus have much to gain from successful treatment. Patients with advanced liver diseasae can be successfully treated with interferon-based therapies. . .[4]

Dr. Edlin believes that plaintiff Goforth's 2003 biopsy results "certainly showed advanced liver disease that required medical attention." 152-2 at ¶29. Dr. Paris has testified that Goforth was not administered treatment at that time because the results were inconclusive; Dr. Edlin disagrees, stating that "[n]o further diagnostic testing was required . . . to know that Mr. Goforth needed treatment urgently for his hepatitis C." 152-2 at ¶31. The recommendation of Dr. Singh to provide immediate treatment bolsters Edlin's opinion.

After the GDC's determination that Goforth's initial [2003] biopsy was inconclusive, Goforth did not undergo a second biopsy until October of 2005, **two years** after his initial "inconclusive" test and 55 months after he tested positive for HCV. This second biopsy showed that Goforth had developed cirrhosis of the liver. Dr. Edlin opines that the delay in obtaining biopsies had a negative effect on Goforth's mental and physical health, and made Goforth less likely to respond to treatment.

The GDC guidelines for treatment of hepatitis C did not permit an inmate to be treated with antivirals unless an inmate's ALT levels were two to three times the upper normal limit. Dr. Edlin has opined that this criterion is arbitrary and not based on medical evidence, stating that a higher ALT level does not necessarily mean more damage to the liver and that a biopsy is appropriate any time an inmate's ALT levels are consistently elevated.

---

[4]This quotation is taken verbatim from Dr. Edlin's declaration and has not been cross-referenced with the original source, which was not provided to the court. Dr. Paris' deposition clearly states that the information included in this quote was written by his co-author.

Dr. Paris had the final say as to whether any inmate, including Goforth, was put on antiviral medication.

During his incarceration, Goforth contracted diabetes which plaintiff's expert has opined *could* have been a result of the plaintiff's hepatitis C.

Plaintiff alleges that he suffered mental anguish as a result of what he thought was improper treatment for his serious medical needs.

## DISCUSSION

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976). However, the course of treatment is "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. A mere disagreement between a prisoner and prison officials as to diagnosis or treatment does not give rise to a constitutional violation. *Id*. at 106. The Eleventh Circuit has refined *Estelle* as follows with respect to delay in medical treatment:

> *Delay in access to medical attention can violate the Eighth Amendment when it is tantamount to unnecessary and wanton infliction of pain. Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to lay persons because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not violate the Eighth Amendment.*
>
> *The seriousness of an inmate's medical needs may be decided by reference to the effect of the delay in treatment. Where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious. An inmate who complains that delay in medical treatment rose to a constitutional violation must place <u>verifying medical evidence in the record</u> to establish the detrimental effect of delay in medical treatment to succeed. Further, the tolerable length of the delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay.*

**Hill v. Dekalb R.Y.D.C.**, 40 F.3d 1176, 1187-88 (11th Cir.1994) *abrogated on other grounds by Hope v. Pelzer,* 536 U.S. 730 (2002) (internal citations and punctuation omitted).

## Dr. Paris

Ordinarily the opinion of Dr. Paris, an expert in the field of treatment of hepatitis C, would be given deference and the disagreements between experts would not be enough to create a question of fact as to deliberate indifference. However, plaintiff Goforth has provided evidence that tends to show that the policies set forth by the GDC guidelines, which were put in place by Dr. Paris, were designed around budgetary restraints rather than being designed around the best interest of the inmates. Antiviral treatment costs more than $10,000 per patient.

> [S]ystemic deficiencies in medical care may be related to a lack of funds allocated to prisons by the state legislature. Such a lack, however, will not excuse the failure of correctional systems to maintain a certain minimum level of medical service necessary to avoid the imposition of cruel and unusual punishment.

*Harris v. Thigpen*, 941 F.2d 1495, 1509 (11th Cir. 1991).

Specifically, the plaintiff has produced a document showing that the number of inmates in the custody of the GDC that are receiving treatment for hepatitis C went from 139 in November of 2000 to 68 as of January 2006.[5] Tab #152-13. Also to be considered is the fact that in many instances, the GDC policy represents what would be the least cost-demanding alternative.[6]

Dr. Paris has stated under oath that all decisions that have been made with respect to antiviral therapy have been based on sound medical judgment supported by the medical community and that at no time was cost a factor in making decisions with respect to inmates' hepatitis C. However, self-serving statements cannot be given total deference when evaluating a party's state of mind, and there is circumstantial evidence before the court tending to show that budgetary concerns could have impacted the standard of care and treatment to be afforded to inmates with hepatitis C.

- 8 -

---

[5]There are fluctuations in the number of inmates being treated with the number getting as low as 42 in August of 2004.

[6]For example, the GDC policy required that inmates' ALT levels be two or three times the normal limit rather than just higher than normal, and the GDC policy did not begin treatment for cirrhotic patients.

In addition to the general GDC policies, there are issues of fact regarding [specifically] whether plaintiff Goforth's constitutional rights were violated by making him wait more than four years after being diagnosed as being positive for HCV before obtaining a biopsy which Dr. Paris deemed "conclusive." Because of the differing views of the experts, and because of Dr. Paris' intimate involvement in the formulation of the GDC's treatment guidelines, summary judgment for Dr. Paris is inappropriate.

## DAMAGES

The defendants have asserted that even if judgment were not appropriate based on the level of treatment afforded to plaintiff Goforth, that the plaintiff has failed to prove an injury. Under 42 U.S.C. §1983, a physical injury is required in order to prove an Eighth Amendment violation. Dr. Paris has asserted that the plaintiff was predisposed to be non-responsive to antiviral treatment and that his weight is to blame for his contracting diabetes. Dr. Eldin has opined that the delay in treatment of Goforth's hepatitis C (1) might be responsible for Goforth's developing cirrhosis; (2) could have caused Goforth's liver to deteriorate further than it would have if treatment had started earlier; (3) caused undue pain and suffering; (4) contributed to Goforth's onset of diabetes; (5) contributed to Goforth's nonresponsiveness to antiviral medication; and, (6) caused Goforth mental anguish. With conflicting evidence coming from the experts, damages become an unresolved issue of fact.

## QUALIFIED IMMUNITY

Finally, Dr. Paris has asserted the defense of qualified immunity which shields government officials from suit if they do not violate clearly established federal law in the performance of their official duties. Dr. Paris was clearly performing official duties when overseeing plaintiff's treatment; thus, the only question remaining is whether he violated clearly established law.

The law regarding deliberate indifference to an inmate's serious medical needs and regarding the formulation of prison medical policy based on budgetary concerns has been clearly established in this circuit as outlined above. Accordingly, Dr. Paris is not entitled to qualified immunity.

In light of the above analysis, IT IS RECOMMENDED that the defendants' Motion for Summary Judgment be **DENIED** with respect to claims against Dr. Paris.

### Dr. Oderinde

Dr. Oderinde was plaintiff Goforth's treating physician for much of the time in question. Plaintiff alleges that Dr. Oderinde is responsible for "block[ing] access to further testing and treatment, relying solely on Mr. Goforth's ALT — an inappropriate indicator of disease progression." Plaintiff's Response, Tab #152 at 18. Whether or not defendant Oderinde is liable to plaintiff Goforth for any injuries sustained as the result of plaintiff's not receiving timely and proper medical treatment (if, in fact, such is established by the evidence) requires consideration of whether or not Dr. Oderinde, as a non-specialist in the area of hepatitis C treatment, *reasonably* relied on the guidelines that were developed by Dr. Paris, an expert in the field of hepatitis treatment, and/or whether any such reliance obviated the need for him as a physician to do more than simply follow those guidelines. In the view of the undersigned, such determinations should be made by a jury.

Insofar as any claim of qualified immunity by Dr. Oderinde is concerned, the same is inappropriate for the reasons noted above in considering Dr. Paris' claim.

Accordingly, IT IS RECOMMENDED that the defendants' Motion for Summary Judgment be **DENIED** with respect to Dr. Oderinde.

## CONCLUSION

Based on the above analysis, IT IS RECOMMENDED that the defendants' Motion for Summary Judgment be DENIED.  Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom this case is assigned **WITHIN TEN (10) DAYS** after being served with a copy thereof.

SO RECOMMENDED this 5th day of SEPTEMBER, 2007.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE